Thank you, members of the Court. Good morning. My name is Nate Wagner. I represent the appellant Stephen Kranska, and we are asking the Court to reverse the District Court's ruling and remand this case for trial by a jury of Mr. Kranska's peers. And the basis of our arguments is that Montana Supreme Court has never limited the holding of Ridley, which arises under the Unfair Trade Practices Act, to only apply in cases arising under car crashes or to only apply to cases where a claimant's medical bills are not being paid by some other form of insurance. And the District Court has ruled that because this case arose outside of the automobile context, and it arose under circumstances where Mr. Kranska's medical bills were being paid by another source, that Ridley doesn't apply and that there is a defense to the Unfair Trade Practices Act claim. The District Court also ruled that Mr. Kranska's demand in excess of a statutory cap on medical malpractice damages is an absolute defense to the obligation to advance pay medical bills under Ridley, and we think that's incorrect as well. This case arises from a Boston intubation and surgery, and the description was a chiseling action and it pretty good. And we believe this is a case where liability was obviously clear from the get-go. Mr. Kranska incurred hundreds of thousands of dollars in medical bills, submitted a demand in accordance with Montana Supreme Court's holding in Ridley that says these expenses need to be paid in advance without requiring a release and cannot be delayed. And the Montana Supreme Court has said that the statutory language requiring a prompt, fair, and equitable settlement means that that be paid as soon as it is clear that the damages are caused. But it was paid, you know, the reason for that as I understand it is so that the plaintiff is not sitting there out of pocket with the judgment with the pressure of medical bills, right? Isn't that the premise? Not exactly, not exactly, Your Honor. The Montana Supreme Court rejects the idea that there's a duplicative payment taking place. The Montana Supreme Court's holding is that you can recover damages both from your medical health insurance and from a tort feeser. And the only way that... Can you recover double damages for the same medical expenses? The Montana Supreme Court's view is that's not double damages because... What is the case from Montana that says that's not double damages? It's a series of cases and they're cited in the briefing, Your Honor. What's the best case? I think the best case is Swanson. I'm sorry, Your Honor. I would have to find that in my brief, but it's in the briefing. Okay, well, we'll hunt and peck for that. But let me go back then. What about the Greenell case, which permits the third-party insurer to offset their obligation by subtracting what's already been paid from the first-party insurer? Well, Your Honor, the... Is that applicable here? Are you referring to the Greenell v. Safeco case that's a district court, a Montana State District Court case? I understand they're not precedential, but they're instructive. Well, and our argument is that they're not, because that case arose in 2013 and the Montana Supreme Court has subsequently issued two opinions in the Teeter case and in the High Country Paving case to state that the Ridley test consists of two parts. Is liability reasonably clear and are the damages, are the medical expenses causally related? That's the end of the test. The test doesn't include, are those expenses being paid by a third source or did this case arise outside of the automobile context? And the defense argues that, the insurers argue that, and the district court agreed, that there should be additional components to the test. And those components don't arise from any Montana Supreme Court case law. They arise arguably from the holding of Greenell and Bear and the Helms case, the three district court cases that were state district court cases relied upon. But those cases all arose prior to the Montana Supreme Court's holdings in Teeter and High Country. And then following that, you only have one state district court that has reassessed this issue and that court said, it's a two-part test, full stop, we can't go any further. And so... And the court here assumed that there is this basis, correct? The court said essentially there are five district court cases and the greater weight of the district court, state district court cases... That wasn't my question. There's two parts to the test. Correct. The court assumed the first part in terms of liability and then made a decision navigating the Montana law that because the expenses were paid, the company didn't have to pay them. And you're saying it doesn't matter that under part two of the test that the insurance company has to pay? Not exactly, Your Honor. My argument would be that the court added two new parts to the test. One of which is, are the expenses being paid by another source? No, no, that's not my question. So listen to the question. My understanding of the two-part test, it's two parts, right, under Ridley? Liability reasonably clear. Liability reasonably clear. Expenses causally related. Expenses related. You would apply Ridley outside of the context of automobiles? Correct. Because you reasonably believe that given the opportunity, the Montana Supreme Court would do so, right? More the point, I believe that Ridley did not arise under automotive insurance statutes. It arose under the Unfair Trade Practices Act that applies to all insurers. The question presented in Ridley is, does an insurer? The holding is, an insurer must. And there is no limitation on whether it's automotive insurance or any other kind of insurance. There is reference, six paragraphs later in Ridley, to an additional rationale behind Ridley being the existence of mandatory minimum coverage. But that issue was presented kind of tangentially in the Shilhanik case, where the Montana Supreme Court said, no, we're not going to limit the requirement to advance pay medical expenses to the mandatory minimum coverages arising under automobile insurance statutes. It applies to all medical expenses that are causally related. And so in our view, the district court judge in this case did not apply the second part of the test, whether the expenses are causally related. They clearly are. There's no dispute that all of these medical expenses are causally related. Can you tell me what impact the settlement has on this claim? Did he agree or did the parties agree that they could carve out this second stage of litigation? Because it appears that he resolved everything and then was dissatisfied with what he received and then filed this case, right? No. Respectfully, Your Honor, he did not release the insurer. And the unpaired trade practices claim can't arise until, in a third party setting, until the underlying claim is resolved. So he settled. He released his claim against the liable parties, not against the insurance carriers. And there is good authority that if an insurer tries to demand a settlement in that context, tries to demand a release, that is an additional act of bad faith. An insurance company can't leverage a settlement by demanding a release of the insurer. And so his settlement was against only the underlying claim. And that settlement occurred almost a year after he made his demand under Ridley to have those expenses paid in advance. So he was never out of pocket for those expenses, right? He was for a certain amount of time, but he wasn't out of pocket. How so? Like maybe with his... With the coverage that he's getting from his own carrier. But again, the Montana Supreme Court has ruled that that's not duplicative payment. It's not double recovery. Yeah, I know that's your position. I just was factually speaking. Yeah. Whether... I mean, I can only think of what expenses would he be out of pocket if they were covering them? Only for the delay, Your Honor, in receiving coverage. And so our argument is not that he was under financial duress and that he... That's not the basis of... And your argument is that that's not the basis for that test in the first place. Correct. Correct. That's not what the Montana Supreme Court has said. And tell me again what the basis for that test is if it's not to make sure that people aren't out of pocket? It's because the insurance companies have a duty to effectuate a prompt, fair, and equitable settlement. Okay. And they do not get to... The insurance companies are not allowed to factor in... Whether you're insured or not? Whether you have your own insurance, exactly. Because the fact that a person has had the foresight to spend some of their money to obtain an alternative form of insurance to make sure they're covered, whether or not they're harmed by someone who has assets or insurance, that doesn't benefit the insurance companies. That benefits only the claimant. And the fact that it leads to a claimant being able to recover their medical expenses more than once, that's no different than someone who has two life insurance policies. Was there any reason that the insurance company would need to determine whether it was the doctor or the assistant or anything like that that caused the injury to his esophagus? And that's one of the arguments that we've made, Your Honor, is that the defendants, instead of coming together and saying, hey, we need to settle this guy out, pay him his medical expenses, and then we can figure out amongst ourselves how to apportion this, they pointed the finger at one another and said, no, it's their fault, no, it's their fault. And our view is there's plenty of opportunity for them to have that finger pointing amongst themselves. And that does not give them a basis to refuse to pay the medical expenses that Mr. Kransky incurred. I see. Okay. The other issue, which is also significant here, relates to the settlement offer and the cap that Montana imposes. So is there a way to distinguish between contesting the claim and contesting the amount? And how does that fit into the construct here where Montana does provide this ceiling? Yeah. The statute that establishes the cap says that if an award is in advance of the cap, that the court in post-trial proceedings will reduce the award to the capped amount. Right. And so that contemplates the idea that a claimant can ask a jury for an amount greater than the cap. It contemplates, in my view, that a claimant can make a demand to an insurance carrier in advance. And in fact, there is, it would be- But let me ask, if you make the demand to the insurance carrier in excess of the cap, by virtue of state law, is the insurance company limited to having to pay just to the cap? We would argue that they have to advance pay medical expenses, or pardon me, advance pay. They have to settle within, they can offer to settle within the cap, which is what they did eventually. They settled for less than the capped amount. If an insurance carrier were to say, here's your medical expenses of $240,000, here's $250,000 of non-monetary damages, emotional distress damages, whatever, we're tendering that to you, we think that would comply with the requirements. But that's not what happened here. Instead, they didn't pay the medical expenses and they didn't offer anything above the medical expenses until a year later at mediation. And so we don't, the judge ruled that making a demand in excess of the cap essentially ends the statutory duties under the Unfair Trade Practices Act, and as announced by Ridley, and we think that's wrong. Unless there are further questions, I'd like to reserve- Yep, you got it. Thank you. We'll round up to three. Are we going to put nine minutes up? Yeah, let's go nine. Yeah. Good morning, your honors. My name is Randy Colbert. I represent UMIA Insurance. May it please the court. When viewed through the lens of well-established Montana bad faith law, it is clear the district court's order is correct and should be affirmed. In addition, and there was issues raised about liability from, I think, a couple of justices, does that exist? We believe that defendants are entitled to judgment for the additional reason that liability, especially as to our client, UMIA, and it's insured the hospital, was never reasonably clear. Now, a couple of facts to indicate the kind of differences that bear on our client's defenses. One, the hospital was not directly involved in the intubation of Mr. Kranska. That was completed by Dr. Robertson, who was with Northern Rockies. The hospital's not responsible for his alleged actions or inactions, and the student who performed the intubation was a student at Flathead Valley Community College, and that community college had agreement with the hospital to allow students to participate, and the college had to defend and indemnify the hospital if any actions of the student caused an injury to somebody. So, the practical result, if I hear your argument, is that you would want a remand for a determination on whether liability was reasonably clear? No, absolutely not. Okay, what do you want? Well, we just think there's an additional reason, and so we already have the judge's reason why Ridley didn't apply. Right, and if we disagreed with you that... He disagreed. We also argued, well, Ridley doesn't even apply. There's no duty to advance pay unless liability is reasonably clear, and that's a high standard. The Montana Supreme Court has addressed it first in Peterson. Well, I shouldn't say first. Primarily in Peterson, which was a bad faith case, and the court said, oh, to hold and ensure liable for bad faith, liability has to be, more than a preponderance of the evidence, essentially a clear and convincing standard as to whether liability is reasonably clear. So, that's the standard you have to look at as to whether liability is reasonably clear, the very high standard. But just so we're clear to follow up on Judge McEwen's question, so we have the question of whether they would be liable in terms of at fault, but the question that the district court decided in this case under Ridley was that whether there was a reasonable belief that there would be a duty to pay, and those are two different things. You're saying we should win for another reason. Sure, exactly. All right, but if we can put the other reason aside for a moment. For the reason the district court said, it was under Ridley that there was no duty here because for various different reasons. Absolutely. So, first, the judge didn't say Ridley doesn't apply outside of the auto context. The judge didn't say Ridley doesn't apply to expenses that have already been advance paid. What the judge said was Montana law is unclear on those two issues, and when Montana law is unclear on those two issues, that provides a defense for the insurance companies to contest it. So, why was it unsure if Ridley would apply outside the auto context or to expenses that have already been advance paid? That's in the Ridley decision itself. So, the Ridley decision interpreted the UTPA. Nowhere in the UTPA does it say you must advance pay medical expenses if liability is reasonably clear. In fact, in the Ridley decision, the court noted that two prior federal district courts have said, no, the UTPA doesn't require advance payments. And, in fact, the Ridley decision noted that in 1995, the legislature sought to amend, or somebody raised a bill to amend the UTPA to include a requirement that you advance pay. That didn't come through. So, this was a judicially created rule in  Can you give me an example where it's applied, where they said, reasonably clear insurance companies, you need to pay now in advance. Do you have cases like that? Well, there's cases. Yeah, and are they all the automobile cases? Yeah, and that's the thing. Ridley was decided almost 28 years ago. And Mr. Hayhurst has more precise numbers than I, but I think over 100 cases have addressed it. It has not been applied outside the auto context in all that time. Could it be later? It could, but it hasn't been. And the underpinning So, let's assume that we were to determine that Ridley should be extrapolated to the non-automobile context. If that were the case, I assume you would want a court to make a that liability was not reasonably clear, so you don't even jump over to that, right? That's the thing that's in particular, yeah. Well, that's what I was trying to, you know, because you're already hearing these kind of multi-headed things, and we're trying, we have to figure out, what's your argument? Do you win on this? Do you win on that? Do you lose on this? Do you lose on that? You know, so, if we don't buy the Ridley is limited to autos, then you still think that your client should not be liable because liability was not reasonably clear. In any event, whatever context you're looking at Ridley, it requires reasonably clear liability to exist before the duty to advance pay, or even the duty to effectuate prompt, fair, and equitable settlement exists. Right. But fundamental, is your colleague going to address the cap on damages, or is that part of your argument? Well, I can ask questions about it, or respond to questions about it. We didn't really split it up on which arguments each side will respond to. But at the end of the day, just so I understand how your position is, is that there has to be, the insurance company has to be on notice that they're going to have to pay. I'm changing the language a little bit here. I'm trying to this is almost like qualified immunity. We deal with officers when they're being sued, police officers, where the officer has to be on notice that, look, if you do this thing, you're going to be on the hook to pay. And you're saying your client is not on the hook to pay for, I think, at least three reasons. One, not outside the automobile context, actually four, not outside the automobile context, that some awards have already been, or compensation already been paid by the, metal expenses have been covered, damages over the cap, and they wouldn't be on the hook anyway, as a matter of fact. It seems to me that those are the four points you're making. Well, those are four points, but not maybe necessarily, you know, in that way that you presented it. I mean, to say an insurance company is on notice of paying, every claim is handled in its individual merits. And so, when a claim like this comes up, and someone demands a RIDLEY payment, the first step is, well, does it apply in this context? Is our client liable, reasonably liable? Is that term is defined in the UTPA? Well, your client responded that we're not liable because it went over the cap, and it wasn't reasonably clear, right? That was like your response then immediately. That wasn't the response during the handling of the claim. Right, right. Yeah, the response was, we insured the hospital. We weren't involved in the intubation. There's been no evidence. You haven't submitted an expert. Montana, it's black letter law. In a case like this, you have to have expert testimony to show there's a medical malpractice claim. This is who did it. And you didn't say anything about the fact in your letter that we know you're covered by insurance, and it's being covered right now. Well, there was a KRMC, the hospital's attorney, was detained directly by the hospital, and he responded to the limited effect of, oh, I understand all your medical expenses have already been paid. Is that correct? And this was when they made the settlement demand in April of 2020. But he made the Ridley demand before that. Not to our client. Oh, not to your client. No, there was no Ridley demand ever made. Until April. And well, April, there was a settlement demand that said, hey, we demanded Ridley before. Right. And we clarified through Mr. Gokachia, no, in fact, you never made a Ridley. Oh, that's what it was. There's a dispute regarding that, right? But you don't have any documentation that he ever demanded it before April. Absolutely. Yes, there is no. They did not. Okay. They did not. Got it. Okay. They never requested a Ridley demand of us prior to April. And when is the settlement? October? It was in November of 2020. Okay. I'm set. Thank you. All right. Thank you very much, counsel. All right. Thank you. May it please the court. My name is Matt Hayhurst, and I'm here today on behalf of PPM, which is the insurer for the anesthesiologist, Dr. Corey Robertson, and also his medical group up in Kalispell, Montana. So first off, like Judge Kendall coming from Chicago, coming here from Montana, where they got seven inches of snow last night at my favorite ski resort, we're happy for the change of weather. Okay. So time and context are important in this case for two reasons. One, just by way of background. The acts relating to this claims handling occurred in the fall of 2019 and in 2020 in the midst of COVID. And yet you have a medical malpractice claim that was resolved within a matter of months of the demand being made without the plaintiff having to hire an expert, which can be expensive, without them having to go through the Montana Medical Legal Panel, which is the required adjudicatory process in Montana, and without them having to file a lawsuit. And there was a settlement. There was a release. It did not include the insurer, but it was a full settlement of all the claims relating to the alleged malpractice itself against the anesthesiologist, against the anesthesiology group, and the other potential defendants. So time and context are important for that reason. Time and context are also important because this case doesn't require the court to determine what the law is, not what the law is now, not even what the law was back in 2019-2020. All this court is required to do is to look at the district court's order and determine whether we had a reasonable basis for the decisions that were made at that time. And here you had an Article III judge, Dana Christensen, who has decades of doing complex litigation before he took the bench, issuing a thorough opinion. The conclusions he reached were not surprising. As was pointed out by the panel already, the medical bills were paid. So it was not unreasonable for the insurers to reach the conclusion that they didn't have to double pay the medical bills. As Judge McEwen pointed out, the Greeno opinion, it's a district court case. It's helpful. It provides input. There were three district court cases that provided input and said, you know what, if medical expenses have already been paid, you don't have to pay them again. But we're really talking about only a period of time then if the request for the Ridley payments was April, then you have six months between that and the settlement. Is that correct? It is, Your Honor. Although the request, there was a Ridley request to my... To your client. Yes. When was that? That was in the fall, in November of 2019. Okay. So November to October, to November. So one year. Okay. Yep. Exactly. And the response from the defense counsel hired by PPM was to say, it looks like your medical expenses were already paid. And that's an undisputed fact in this case. And then I think your colleague on the other side for Kranska says, but Montana law permits you to recover medical expenses as part of your damages, even when they've already been paid. Is that true? It is common in Montana, or at least at the time, for plaintiffs to double dip, to recover twice. But that's a different analysis of whether you have to advance pay those expenses. And the rule, creating the advance payment rule, explained that the entire purpose was to keep an innocent automobile victim from being in distress. It makes sense. If you're a person of ordinary means, and you get rear-ended and have a broken arm, you may have $25,000 in medical bills, and that could create a hardship. And so the court said, you know what? You have to advance pay those. So you're distinguishing between the advance payment and then the ultimate, either going to trial or settling, in which you can, as you put it, double dip, or as they say, there's no restriction on recovery, even though the expenses had been paid. Yes, Your Honor. Although I will say there's fights about that. So there's times where there are fights about whether you can double dip, depending on the insurance circumstances and whatnot. But as a general proposition, they have the ability to try to capture those damages twice. But it's different than whether we have to advance pay them. So what then do we make of this statutory cap on the non-economic damages? It's a great question, Your Honor. And it's another one of the reasons why I believe Judge Christensen's decision was just common sense. So if you're going to request triple the cap, half a million dollars more than the cap for non-economic damages, then an insurance company has a reasonable basis to dispute the amount of the claim. And that's what the statute says. That's the absolute defense. So it's not a surprising conclusion. And it doesn't mean that you can't try to recover those damages later. It doesn't mean you can't try to beat the cap or get it ruled unconstitutional. But you can't have your cake and eat it, too. You can't claim that liability is reasonably clear as to an amount of damages that clearly exceeds the cap in the same breath, right? And then briefly on the automobile context for Ridley, this, as we have found in the 26, 27 years since this case was decided, there's well over 100 opinions that have been issued. None of them have applied it outside the auto context. And I will say that's because part of Ridley's holding is based on the auto rule. So again, it's not whether that's the right decision or the wrong decision or what the law is. It's whether there's a reasonable basis to reach that decision. And just two quick points, if I may. One is the court didn't dismiss the entire case. The court allowed Mr. Krantz to proceed to trial on some claims, and he elected not to do that. He voluntarily dismissed those with prejudice. And finally, and I think Judge Owens has made this clear, we believe you can just affirm for the grounds given by the district court. But there's an alternative reason supported by the record that would allow you to affirm as well. Thank you very much. Thank you. Thank you, counsel. Thank you. Thank you, Your Honors. The citations that the court had requested earlier that I did not have available are the holding of Scalgi. That's 565 P. Second 628. The holding of Dayton. That's 879 P. Second 704. And the holding of Swanson, which is 46 P. Third 584. And those are found in the reply brief, page 23 of 32. And they all affirm that the Montana Supreme Court does not consider those payments to be duplicative. Thank you. I think your opposing counsel agrees with you. Okay. Or at least there's, you can argue it in Montana, but that's generally been the practice. And it's subject to our Montana's version of the made whole doctrine, which says that the only time subrogation is allowed where an insurance company can go recover from a tortfeasor is if the claimant has been fully compensated for all injuries. And obviously where a person has lasting injuries or where a person has paid attorney's fees in order to recover that money, they've not been made whole under Montana law. And so under the circumstances of this case, I think Mr. Hayhurst said it's common for a claimant to be able to recover from both their medical insurance and from a tortfeasor. I appreciate that clarification. Thank you. And I think it's not only common. I think it, at least at the time that this case arose, that was the law in Montana. Absolutely. Now the defense argues that you're not required to determine what the law was in 2020. And we totally disagree with that. We believe that the court does need to determine what Montana standards were in 2020 when this claim is being adjusted by the insurance carriers. And, you know, one of the cases I didn't discuss in my opening remarks was the Ulig case, which is a non-site opinion, but we've included in our briefing because it is indicative of what the Montana Supreme Court would do if presented with this question about medical expenses that have been paid by another source. And the court stated in that case that the district court properly advanced paid the medical expenses, even though they had been paid. And the defense had argued that unfortunately they didn't appeal it. And so that issue wasn't before the Montana Supreme Court, but they noted in their recitation of the facts that that, those, those do need to be advanced paid. Now, the other point I would like to make is the issue of this automobile context and the Shilhannock case. It's very important. And this is found in page 25 of our opening brief. The Montana Supreme Court held as follows, quote, our holding in Ridley regarding section 33, 18, 201 of the UTPA is not circumscribed by the requirements of section 61-6-103 sub two of the MVRA. Thus to interpret Ridley as applying only to the medical expenses, which are within the mandatory minimums required by the MVRA is to interpret Ridley too narrowly. We further note that the UTPA itself contains no reference to the MVRA. That is the UTPA, which is enacted to regulate trade practices in the business of insurance contains no language indicating that it is limited by the MVRA, which lists the and users. And so what we've got here is another attempt by insurance carriers to graph the limitations onto the Ridley requirements. The Montana Supreme Court, every time this has come up has rejected it. They rejected it in Shilhannock. They rejected it in, in Teeter and in High Country, where they said it is a two-part test. Is liability reasonably clear? Are the medical expenses causally related? That's the end of the story. And there should not be any new parts who's paying the medical bills what was the context of the crash and the argument that it's never been applied outside of the automotive setting. That's kind of a sample size issue. You've got lots of car crashes where liability is reasonably clear. You have a relatively rare number of medical malpractice claims where liability is reasonably clear. This is one of those cases. It's an exceptional case where liability is so clear that the duties apply. Thank you, counsel. Thank you. Thank you all counsel for their briefing the argument in this case. This matter is submitted and we are in recess till tomorrow.
judges: McKEOWN, OWENS, Kendall